FOURTH DIVISION
March 10, 2016

2016 IL App (1st) 152608

No. 1-15-2608

| | | |
|---|---|---|
| *In re* D.M. and S.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 14 JA 1487 |
| v. | ) | 14 JA 1488 |
| | ) | |
| Timothy M., | ) | Honorable |
| | ) | Bernard J. Sarley, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     This is an appeal from an order of the circuit court of Cook County adjudicating minors D.M. and S.M. wards of the State. A petition for adjudication of wardship was filed after the siblings' half sister, K.S., reported that their father, Timothy M., had sexually abused her multiple times over the span of several years. Timothy confessed to sexually molesting and abusing K.S. in a video recorded statement to the police, and he has since been arrested and charged with predatory criminal sexual assault and is awaiting trial. Timothy appeals the trial court's ruling adjudicating D.M. and S.M. wards of the State arguing that the video recorded statement of K.S. was inadmissible hearsay and there was no proper foundation to admit his own video recorded statement and the video recorded statement of K.S. For the reasons that follow, we affirm the trial court's ruling at the adjudication hearing.

¶ 2                                    I. Background

¶ 3     Minors D.M., S.M. and their older 15-year-old sibling, K.S., all have the same mother, who is deceased.  D.M. and S.M. resided with respondent, Timothy, who is the biological father of D.M. and S.M. and the stepfather of K.S.  K.S. is not a party to this case nor is there any evidence that a petition was filed to adjudicate K.S. a ward of the State.  On December 19, 2014, the State filed petitions for adjudication of wardship alleging that eight-year-old D.M. and seven-year-old S.M. were abused and neglected.   The petitions alleged that their father, Timothy, was incarcerated after he confessed to sexually abusing his 14-year-old stepdaughter, K.S.  Timothy's confession came after K.S. made an outcry and described several instances of sexual abuse during a victim sensitive interview.

¶ 4     In the petitions, the State alleged that: (1) D.M. and S.M. were abused pursuant to section 2-3(2)(ii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(2)(ii) (West 2012)), in that they faced a substantial risk of injury; (2) they were neglected pursuant to section 2-4(1)(b) of the Act (705 ILCS 405/2-4(1)(b) (West 2012)), in that they lacked necessary care; and (3) they were neglected pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2012)), in that their environment was injurious to their welfare.  The State also alleged that there was an immediate and urgent need to remove D.M. and S.M. from their father, and it further requested an order appointing the Illinois Department of Children and Family Services (DCFS) as D.M. and S.M.'s temporary custodian.  Attached to the petitions was an affidavit verifying that Timothy had been incarcerated as a result of his confession that he sexually molested K.S., and further stating that the mother of D.M. and S.M. was deceased.

¶ 5     Following a December 19, 2014 temporary custody hearing, in which the trial court found there was probable cause that D.M. and S.M. were abused and neglected, the public guardian filed a motion to admit the recorded testimony of K.S. during her victim sensitive

interview. The trial court initially denied that motion on May 8, 2015. The State then filed additional pleadings in support of the admission of K.S.'s testimony. On July 9, 2015, the court reconsidered the motion to admit K.S.'s statements and found that the statements were admissible. In doing so, the court noted that it was required to liberally construe and apply the Act, and the abuse of K.S. was relevant to D.M. and S.M. because the abuse occurred while D.M. and S.M. were under the care of and residing with Timothy. The court also stated that as long as K.S.'s statements were corroborated, they would be admitted.

¶ 6    At the adjudicatory hearing, the State called Detective Dan Matuszak. Detective Matuszak testified that he was assigned to investigate a case involving K.S. in December 2014. Detective Matuszak attended K.S.'s victim sensitive interview at the Children's Advocacy Center in Justice, Illinois. The following testimony was adduced concerning the foundation for admission of a video recording of the interview. Detective Matuszak observed the interview and testified that the:

> "forensic interview takes place with myself and a detective another
> detective [*sic*] in the Bridgewater Police Department along with an
> investigator from the DCFS. We're seated in one room and we're
> able to monitor the interview with [K.S.] and the interviewer who
> was Danielle Butts via a camera system."

Detective Matuszak further testified that the room where the interview took place "has cameras and microphones to record the interview" and that a copy of the interview "was transferred onto a compact disc." Detective Matuszak then identified State's Exhibit No. 1 as a copy of K.S.'s victim sensitive interview. He knew it was K.S.'s interview because he has previously reviewed the contents of the disc and signed it in red ink. Detective Matuszak testified that the disc

recording was a true and accurate copy of the recording he watched, and that he did not observe any problems with either the audio or video recordings. On cross-examination, Detective Matuszak testified that he does not have anything to do with the maintenance of the recording equipment at the Children's Advocacy Center.

¶ 7    With regard to the foundation for the video recording of Timothy's statement, Detective Matuszak testified he personally interviewed Timothy, who he identified in court. The interview took place at the Bridgeview police department. Detective Matuszak's interview with Timothy was recorded via digital recording. Specifically, Detective Matuszak stated: "The cameras and the microphones are set up to a DVR [digital video recording] type recording system where you can initiate the recording in another room and then it records everything that was in that interview." Detective Matuszak then identified State's Exhibits No. 2A and No. 2B as the recordings of his interview with Timothy. He reviewed the discs and testified that they were true and accurate copies of his interview with Timothy. He signed each of the discs with his name and badge number. He testified that there were no problems with the video or audio of the recordings, and that the recordings were made as the interview happened.

¶ 8    Timothy objected to the admission of the State's exhibits based on a lack of foundation, but the trial court judge admitted them finding a proper foundation had been laid. The judge then continued the matter so that he could review the contents of the exhibits.

¶ 9    The interview of K.S. (State's Exhibit No. 1) occurred on December 4, 2014 at the Children's Advocacy Center. In the interview, 14-year-old K.S. stated that Timothy had sexually molested, abused and penetrated her. The sexual abuse began when she was eight years old. The most recent abuse had occurred a few weeks before Halloween in 2014.

¶ 10    The interview of Timothy (State's Exhibit No. 2A and No. 2B) occurred on December 4, 2014 at the Bridgeview police department.  Timothy admitted that he had sexually abused and sexually penetrated K.S. numerous times over a period of years.  Timothy stated that he could not make a 14 year old do something she did not want to do, and K.S. kept coming into his bed.  He admitted that preteen K.S. had touched his penis, that he had pushed his penis against her butt, and that he thought that was what K.S. wanted so he did not "stop it."

¶ 11    The trial court judge found that the statements of K.S. showed that she had been sexually abused, and Timothy's statements corroborated K.S.'s statements.  Because D.M. and S.M. were in the care of Timothy when he sexually abused K.S., the court found that D.M. and S.M. were abused by a preponderance of the evidence.   Further, because Timothy was incarcerated and their mother is deceased, the judge also found D.M. and S.M. to be dependent.  The court further found that Timothy was the perpetrator of the abuse and neglect to his children.

¶ 12    At the dispositional hearing, the trial court judge found Timothy was unfit and unable to care for his children, and that it was in the best interest of D.M. and S.M. to be placed in the guardianship of the DCFS.

¶ 13    On September 17, 2015, Timothy filed a notice of appeal only with respect to the trial court's adjudication findings.  For the reasons that follow, we affirm the trial court's judgment adjudicating the minors wards of the State.

¶ 14                                          II.  Analysis

¶ 15    In this appeal, Timothy argues that the trial court erred in admitting certain evidence at the adjudicatory hearing, namely three exhibits containing recordings of K.S.'s statement and Timothy's statement.  The evidentiary standard of proof in adjudicatory hearings held pursuant to the Act is that which pertains to civil proceedings, therefore, the State had to prove the

allegations in the petitions by a preponderance of the evidence. 705 ILCS 405/2-18(1) (West 2012); *In re Stephen K.*, 373 Ill. App. 3d 7, 20 (2007). "Preponderance of the evidence is that amount of evidence that leads a trier of fact to find that the fact at issue is more probable than not." *In re K.G.*, 288 Ill. App. 3d 728, 735 (1997). "The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion." *People v. Pikes,* 2013 IL 115171, ¶ 12. "Under this standard, an abuse occurs when the trial court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view." *People v. Taylor,* 2011 IL 110067, ¶ 27; *In re L.S.*, 2014 IL App (4th) 131119, ¶ 44.

¶ 16    Section 2-3(1)(b) of the Act defines a "neglected minor" to include "any minor under 18 years of age whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2012). Generally, "neglect" is defined as the failure to exercise the care that circumstances justly demand. *In re Arthur H.*, 212 Ill. 2d 441, 462-63 (2004). The term "injurious environment" has been recognized by our courts as an amorphous concept that cannot be defined with particularity. *In re N.B.*, 191 Ill. 2d 338, 346 (2000). In general, however, the term "injurious environment" has been interpreted to include "the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." *Id.* (quoting *In re M.K.,* 271 Ill. App. 3d 820, 826 (1995)).

¶ 17    An "abused minor" includes:

>   "any minor under 18 years of age whose parent or immediate
>
>   family member, or any person responsible for the minor's welfare,
>
>   or any person who is in the same family or household as the minor,

6

or any individual residing in the same home as the minor, or a paramour of the minor's parent:

\*\*\*

(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function; or

(iii) commits or allows to be committed any sex offense against such minor, as such sex offenses are defined in the Criminal Code of 1961 or the Criminal Code of 2012, or in the Wrongs to Children Act, and extending those definitions of sex offenses to include minors under 18 years of age[.]" 705 ILCS 405/2-3(2)(ii)-(iii) (West 2012).

¶ 18    A "dependent minor" is "any minor under 18 years of age:  (a) who is without a parent, guardian or legal custodian; [or] (b) who is without proper care because of the physical or mental disability of his parent, guardian or custodian."  705 ILCS 405/2-4(1)(a), (b) (West 2012).  The Act defines "Minor" as "a person under the age of 21 years subject to this Act."  705 ILCS 405/1-3(10) (West 2012).

¶ 19    On review, a trial court's ruling at the adjudication hearing will not be reversed unless it is against the manifest weight of the evidence.  *In re M.Z.,* 294 Ill. App. 3d 581, 592 (1998).  A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  *In re Edward T.,* 343 Ill. App. 3d 778, 794 (2003).

¶ 20                              A.  Admission of K.S.'s Video Recorded Statement

¶ 21    Timothy argues that the statements made by K.S. during her victim sensitive interview were hearsay statements, and the hearsay exception provided in section 2-18(4)(c) of the Act does not apply to the statements of K.S.  705 ILCS 405/2-18(4)(c) (West 2012).  Section 2-18(4)(c) of the Act provides for the admission of hearsay statements of abuse by a minor: "Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence.  However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect."  705 ILCS 405/2-18(4)(c) (West 2012).  Specifically, Timothy argues that the statements made by K.S. during her victim sensitive interview were not admissible under section 2-18(4)(c) of the Act because K.S. was not "the minor" involved in this case, *i.e.*, K.S. was not named in a petition for adjudication.  Timothy argues that, based on the language of the Act, K.S.'s statements could only be admissible if she was a minor named in the petition.

¶ 22    The State and the minors argue that K.S.'s statements are admissible under section 2-18(4)(c) of the Act because the Act uses "a minor" and "the minor" interchangeably without making a distinction between the two.  The State argues the hearsay exception applies to a statement by any minor and points out that there is no requirement in section 2-18(4)(c) of the Act that the minor be named in the petition before his or her statements can be admitted into evidence.  The public guardian points out that the Act states that evidence of abuse and neglect of one minor is relevant to the abuse and neglect of any other minor, regardless of whether the minor is named in the petition.

¶ 23    This conflict presents an issue of statutory construction.  It is well settled that in construing a statute, we must ascertain and give effect to the intent of the legislature.  *In re A.P.,* 179 Ill. 2d 184, 195 (1997).  The best evidence of legislative intent is the language of the statute

itself. *Id.* "We must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous [citation], avoiding an interpretation which would render any portion of the statute meaningless or void [citation]. We also presume that the General Assembly did not intend absurdity, inconvenience, or injustice." *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001).

¶ 24 Turning to the language of the statute, section 2-18(4)(c) of the Act states:

"(c) Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2-18(4)(c) (West 2012).

¶ 25 It is well-recognized that a statute should be evaluated as a whole with each provision being construed in connection with every other section. *In re A.P.,* 179 Ill. 2d at 197; see *Bonaguro v. County Officers Electoral Board,* 158 Ill. 2d 391, 397 (1994). In section 1-2 of the Act, the legislature directed that the purpose and policy of the Act is to serve and protect the best interests of minors. 705 ILCS 405/1-2(1), (3) (West 2012); see *In re J.J.,* 142 Ill. 2d 1, 8 (1991). The legislature also directed us to liberally construe the Act to carry out its purpose and policy. 705 ILCS 405/1-2(4) (West 2012). "Consequently, we have a duty to construe section 2-18(4)(c) in a liberal manner so as not to defeat the purpose and policy of the Act." *In re A.P.*, 179 Ill. 2d at 197.

¶ 26 We find K.S.'s statements regarding Timothy's sexual abuse of her are encompassed within the hearsay exception found in section 2-18(4)(c) of the Act. First, section 2-18(4)(c) of the Act states "[p]revious statements made by the minor relating to *any* allegations of abuse or

neglect shall be admissible in evidence." (Emphasis added.) 705 ILCS 405/2-18(4)(c) (West 2012). Because the statute does not limit the use of "statements made by the minor" to only those allegations of abuse or neglect directly implicating the minor making the statements or the minor named in the petition, it follows that a minor not named in the petition can offer statements relating to neglect or abuse of another minor, so long as those statements are either corroborated or subject to cross-examination. *In re A.P.,* 179 Ill. 2d at 196 ("a minor's hearsay statement is sufficient to support a finding of abuse or neglect where the statement either is subject to cross-examination or is corroborated by other evidence"); see *In re B.W.*, 216 Ill. App. 3d 410, 415 (1991) (finding that the hearsay statement of B.W. was admissible not only as evidence that B.W. was abused, but also as evidence that R.W. was neglected due to his injurious environment because the language of section 2-18(4)(c) indicates that it applies to statements "relating to *any* allegations of *abuse or neglect*" (emphases in original)).

¶ 27     Second, the Act does not define "a minor" differently than "the minor" but rather only defines "Minor." 705 ILCS 405/1-3(10) (West 2012) (" 'Minor' means a person under the age of 21 years subject to this Act."). K.S. is a person under 21 who was allegedly abused and, therefore, subject to the Act. Accordingly, Timothy's argument that the language "the minor" in section 2-18(4)(c) refers only to "the minor" named in the petition is without weight. Further, as the State and the minors point out in their briefs, "a minor" and "the minor" are used interchangeably throughout the Act without any significant distinction. See 705 ILCS 405/2-18(2)(g), (2)(i) (West 2012) (referring to "a minor" and "the minor" within the same paragraph); see also 705 ILCS 405/2-18(2)(h) (West 2012) (making reference to "a newborn" and "the newborn" in the same section); see also 705 ILCS 405/2-18(g), (h), (i) (West 2012) (referring to

both "a minor/infant" and "the minor/infant" in the same paragraph while referring to the same minor/infant).

¶ 28    Third, if we were to find that "the minor" in section 2-18(4)(c) of the Act is limited to only those minors named in the petition, such a finding would render other portions of the Act superfluous. *Sylvester*, 197 Ill. 2d 225 (we may not construe the statute in a manner that would render another portion of the statute meaningless or void).  Section 2-18(3) of the Act states:  "In any hearing under this Act, proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible."  705 ILCS 405/2-18(3) (West 2012).  If we were to interpret section 2-18(4)(c) of the Act to mean that only statements of neglect or abuse from a minor who is named in the petition are admissible, it would render section 2-18(3) meaningless as that section allows evidence of abuse, neglect or dependence of "one minor" to be admissible on the issue of abuse, neglect or dependency of "any other minor" for whom the respondent is responsible.  See 705 ILCS 405/2-18(3) (West 2012); see also *In re Precious W.,* 333 Ill. App. 3d 893, 901 (2002) (finding that health care records of a respondent's child, other than a child named in the petition, were admissible under section 2-18(4)(a) where those records concerned the condition that brought about the minor's removal from respondent).

¶ 29    Last, our courts, following the directive of the legislature to liberally construe the Act, have upheld the admission of the testimony of a minor not named in a petition, given in chambers and out of the presence of the respondent, under section 2-18(4)(d) of the Act despite the fact that section 2-18(4)(d) does not specifically authorize a nonparty minor to testify outside the presence of the respondent. 705 ILCS 405/2-18(4)(d) (West 1996). In *In Interest of M.D.H.*, 297 Ill. App. 3d 181, 185 (1998), M.R.H., M.D.H.'s brother, testified outside the respondent's

presence that at the time he was living with the respondent, "[h]e saw [the] respondent father on top of M.D.H., 'moving up and down.' " *In re M.D.H.*, 297 Ill. App. 3d at 185.  M.R.H. further testified that the"[r]espondent father and M.D.H. were covered up to their backs, and neither was wearing any clothing that M.R.H. could see." *Id*.  Section 2-18(4)(d) of the Act stated the following:

> "There shall be a rebuttable presumption that a minor is competent to testify in abuse or neglect proceedings. The court shall determine how much weight to give to the minor's testimony, and may allow the minor to testify in chambers with only the court, the court reporter and attorneys for the parties present. 705 ILCS 405/2-18(4)(d) (West 2012).

On appeal, the respondent father objected to M.R.H.'s testimony arguing that section 2-18(4)(d) of the Act does not permit a nonparty minor who was not named in the petition to testify outside of a respondent's presence. *Id*. at 186.  While the appellate court noted that "[s]ection 2-18(4)(d) of the Act does not expressly authorize a nonparty minor to testify outside the respondent's presence" (*id*. at 187), the court ultimately found the statements were admissible.  In finding M.R.H.'s statements to be admissible, the court noted:

> "Nonetheless, considering (1) the overriding purpose of the Act, (2) that the trial court has a *duty* to ensure that the best interests of not only the minor but the minor's family are served at every stage of the proceedings under the Act, and (3) that the court must administer the Act 'in a spirit of humane concern' for 'all who appear before the court,' we conclude that, under the particular

circumstances present in this case, the court did not err by allowing M.R.H., a minor child of respondent father, to testify outside of respondent father's presence." (Emphasis in original.) *Id*. at 187.

¶ 30 Similar to the respondent's argument in *In re M.D.H.*, here Timothy argues that because section 2-18(4)(c) of the Act does not expressly allow the admission of nonparty minor hearsay statements, K.S.'s statements were not admissible because she was not named in the petition. Despite the absence of language in 2-18(4)(c) specifically allowing the hearsay statements of nonparty minors to be admissible, we find, similar to the court in *In re M.D.H.*, that affirming the admission of a nonparty minor statements relating to abuse of another minor is supported by our duty to liberally construe the Act in order to carry out its purpose and policy. 705 ILCS 405/1-2(4) (West 2012). One of the stated purposes of the Act is "to preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her safety or welfare or the protection of the public cannot be adequately safeguarded without removal." 705 ILCS 405/1-2(1) (West 2012). Thus, we find that interpreting section 2-18(4)(c) of the Act as allowing K.S.'s statements of sexual abuse by Timothy to be admissible as evidence of neglect of her half siblings, D.M. and S.M., who were in Timothy's custody and living with Timothy when sexual abuse of K.S. was occurring, carries out the purpose of the Act. *In re K.O.*, 336 Ill. App. 3d 98, 108-09 (2002) ("a finding of abuse of one sibling establishes a *prima facie* case of neglect based upon an injurious environment to another"); see also *In re Z.R.,* 274 Ill. App. 3d 422, 427 (1995). Based on the foregoing, we cannot say that the trial court's decision to admit the statements was fanciful, unreasonable or that no reasonable person would adopt the trial court's view. See *Taylor,* 2011 IL 110067, ¶ 27.

13

¶ 31    Even if we were to assume *arguendo* that K.S.'s statements were improperly admitted, we would find the admission of the statements to be harmless error. Under the harmless error standard, if the State can sustain its burden of proof with properly admitted evidence, the error in admitting improper evidence is considered harmless. *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 737 (1998) ("the allowance of inadmissible evidence is harmless error if properly admitted evidence was sufficient to prove each element of the crime beyond a reasonable doubt"); *In re J.C.*, 2012 IL App (4th) 110861, ¶ 29 ("Errors in the admission of evidence may be deemed harmless where ample evidence supported the court's neglect finding."); see also *In re C.H.*, 398 Ill. App. 3d 603, 608 (2010).

¶ 32    The State had the burden of proving the allegations in the petitions by a preponderance of the evidence, namely that Timothy sexually abused K.S. while D.M. and S.M were under the care of and residing with Timothy. In this case, Timothy, in his video recorded statement, admitted that he sexually abused K.S. on numerous occasions over a number of years. Although we recognize that the trial court stated that it relied on Timothy's statements to corroborate K.S.'s statements, Timothy's statements are substantive evidence that may support the allegations of abuse and neglect in the petitions for adjudication. See *In re Walter B.*, 227 Ill. App. 3d 746, 753 (1992) (admissions by the mother respondent regarding the health and endangerment of her child constituted substantive evidence to be considered by the court during neglect proceedings); see also *In re Ch. W.*, 408 Ill. App. 3d 541, 552 (2011). Therefore, we find the evidence admitted at trial, excluding K.S.'s video recorded statement but including Timothy's video recorded statement, was sufficient to sustain the State's burden of proof at the adjudication proceedings. The statements of Timothy concede that he sexually abused K.S., and the veracity of these statements has not been challenged. In his statement made to the Bridgeview police, Timothy

states that he could not make a 14 year old do something she did not want to do, and K.S. kept coming into his bed. He admitted that preteen K.S. had touched his penis, that he had pushed his penis against her butt, and that he thought that was what K.S. wanted so he did not "stop it." See *In re M.Z.,* 294 Ill. App. 3d 581, 592 (1998) (on review, a trial court's ruling at the adjudication hearing will not be reversed unless it is against the manifest weight of the evidence).

¶ 33    Given that the video recorded statement of Timothy concedes that he sexually abused K.S. while D.M. and S.M. were in his custody and living in his home, we find the evidence was sufficient to prove the allegations of the petitions by a preponderance of the evidence, independent of the statement of K.S. Therefore, if we assume the admission of the statement of K.S. was an error, it was harmless error. See *In re Marriage of Almquist*, 299 Ill. App. 3d at 737.

¶ 34    B. Adequacy of Foundation for Admission of Exhibits No.1, No. 2A and No. 2B

¶ 35    Timothy argues that the trial court erred when it admitted three exhibits—one exhibit that contained K.S.'s recorded victim sensitive interview, and two exhibits that contained his recorded statement—because each of the exhibits lacked a proper foundation. When determining the reliability of the process by which a recording is made, our supreme court has endorsed the following nonexhaustive list of factors to consider: "(1) the device's capability for recording and general reliability; (2) competency of the operator; (3) proper operation of the device; (4) showing the manner in which the recording was preserved (chain of custody); (5) identification of the persons, locale, or objects depicted; and (6) explanation of any copying or duplication process." *Taylor,* 2011 IL 110067, ¶ 35. The court stated, however, that "[e]ach case must be evaluated on its own" and "[t]he dispositive issue in every case is the accuracy and reliability of the process that produced the recording." (Internal quotation marks omitted.) *Id.*; see also *People v. Montes*, 2013 IL App (2d) 111132, ¶ 63.

¶ 36    With respect to K.S.'s video recorded statement, Timothy argues that it lacked a proper foundation because there was no evidence regarding the recording equipment, no evidence regarding the operator or the operator's training, and no evidence regarding the proper operation of the equipment.  Timothy argues that "[t]he record is devoid of any information that might demonstrate confidence in the accuracy or reliability of the process that produced the recording."  Of note, Timothy does not argue that the statements made by K.S. in the recording are inaccurate in any way.

¶ 37    The State, in turn, argues that a proper foundation was laid for K.S.'s video recorded statement because, as the interview was being conducted and recorded at the Children's Advocacy Center, Detective Matuszak along with another detective and the DCFS investigator viewed the interview through a live feed from another room.  The interview was simultaneously recorded using a camera and microphone and was transferred onto a disc.  Detective Matuszak reviewed that disc and signed it indicating that the disc depicted the same interview of K.S. that he witnessed through a monitor the day the interview was conducted.  As such, the State argues that because Detective Matuszak had personal knowledge of the content of the video and testified that he did not see any problems with the recording—either video or audio—that  might challenge the recording's integrity, a sufficient foundation had been laid for the recording.

¶ 38    Here, Detective Matuszak testified that he monitored K.S.'s victim sensitive interview through a live-feed video from another room as the interview was taking place.  He further testified that K.S.'s statements submitted at trial were as he originally perceived them and he did not observe any problems in the recording.  *Montes*, 2013 IL App (2d) 111132, ¶ 61 ("An adequate foundation for admission of a sound recording into evidence exists if a witness to the recorded conversation testifies that the recording accurately portrays the conversation in

question."); see also *People v. Williams,* 109 Ill. 2d 327, 338 (1985). Detective Matuszak further testified about the recording materials and recording processes that were used to record K.S.'s victim sensitive interview. Nothing in Detective Matuszak's testimony suggested that the equipment used to record K.S.'s interview was doing anything but functioning properly on the day it was used. Timothy does not offer any argument or proof to suggest otherwise. Further, Timothy did not make any arguments that the recordings were inaccurate in any way; rather, Timothy argued there was insufficient evidence as to how the recordings were made that prevented the State from laying a proper foundation. See *In re L.S.*, 2014 IL App (4th) 131119, ¶ 49 (where respondent did not argue that the images were visually misleading, or that they had been altered in any way, those still images from a live-feed video were admissible). Based on the foregoing, we cannot say that no other reasonable person would adopt the trial court's decision to admit Exhibit No. 1 into evidence. Therefore, we find no abuse of discretion. *Taylor,* 2011 IL 110067, ¶ 27 ("an abuse occurs when the trial court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view").

¶ 39    Next we must determine whether an adequate foundation was established for the admission of Timothy's video recorded statement. Similar to his argument with respect to Exhibit No. 1, Timothy argues that Exhibits No. 2A and No. 2B, which contain a video recorded interview of Timothy conducted by Detective Matuszak, were improperly admitted because they lacked a proper foundation where there was no testimony regarding the recording process or equipment that was used to record his statement. Of note, Timothy does not argue that his recorded statement was inaccurate in any way.

¶ 40    The State in turn argues that Exhibits No. 2A and No. 2B were properly admitted because Detective Matuszak, the person who conducted the interview, had personal knowledge of it.

Detective Matuszak testified about the recording system that was being used and also testified that he reviewed the DVD recording after it was made and there were no problems with the video or audio.

¶ 41    Here, Detective Matuszak testified that he was personally present for Timothy's statement and he testified that the recording was as he originally perceived it and he did not observe any problems in the audio or video of the recording. *Montes*, 2013 IL App (2d) 111132, ¶ 61 ("An adequate foundation for admission of a sound recording into evidence exists if a witness to the recorded conversation testifies that the recording accurately portrays the conversation in question."); see also *People v. Williams,* 109 Ill. 2d 327, 338 (1985). Detective Matuszak further testified about the recording materials and recording processes that were used when interviewing Timothy. Nothing in Detective Matuszak's testimony suggests that the equipment used to record Timothy's statement was doing anything but functioning properly and accurately recording the statement at the time it was being used. Timothy does not offer any argument or proof to suggest otherwise.

¶ 42    We acknowledge that Timothy argues that a proper foundation was not laid for the video recording of his statement to the police because Detective Matuszak, who participated in the entire six-hour interview, did not review the video recording in full. Timothy's argument that Detective Matuszak did not fully review the video is based on an isolated comment made by Detective Matuszak during cross-examination: "I am not sure if I reviewed the entire duration of the video in full or if I had skipped through but I did review them." Not only does this statement itself reiterate that Detective Matuszak did in fact review the video recording, but Detective Matuszak testified that based on his review of both Exhibits No. 2A and No. 2B, which contained the video recorded statement of the interview with Timothy that he was personally

present for, the video recording truly and accurately depicted the interview he had with Timothy in December 2014. He further testified that he signed the discs upon which the video recorded statement had been copied to verify that he reviewed the discs. As such, Timothy's argument that a proper foundation was not laid because Detective Matuszak's review of the video recorded statement was incomplete is not supported by the record. While Detective Matuszak might have chosen the words "skipped through" at one point in his testimony, the bottom line is that he testified that he reviewed the video recorded statement in full to the extent that he testified that the video recording in its entirety accurately depicted the interview with Timothy, which he personally observed. *Montes*, 2013 IL App (2d) 111132, ¶ 61 ("An adequate foundation for admission of a sound recording into evidence exists if a witness to the recorded conversation testifies that the recording accurately portrays the conversation in question."). Furthermore, we emphasize again that Timothy does not argue that the substance of the video recorded statement, in which he admits to sexually molesting and abusing K.S., was inaccurate in any way; therefore, his argument fails. See *In re L.S.*, 2014 IL App (4th) 131119, ¶ 49 (where respondent did not argue that the images were visually misleading, or that they had been altered in any way, those still images from a live-feed video were admissible). Based on the foregoing, we cannot say that no other reasonable person would adopt the trial court's decision to admit Exhibits No. 2A and No. 2B into evidence. Therefore, we find no abuse of discretion. *Taylor,* 2011 IL 110067, ¶ 27 ("an abuse occurs when the trial court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view").

¶ 43    We further find that the trial court's ruling of dependency as to D.M. and S.M. was also not against the manifest weight of the evidence because their mother is deceased and father is now incarcerated. 705 ILCS 405/2-4(1)(a), (b) (West 2012) ("Those who are dependent include

any minor under 18 years of age:  (a) who is without a parent, guardian or legal custodian; [or] (b) who is without proper care because of the physical or mental disability of his parent, guardian or custodian.").

¶ 44                              III.  Conclusion

¶ 45    For the reasons above, we affirm the trial court's ruling at the adjudicatory hearing.

¶ 46    Affirmed.