2024 IL App (4th) 230977-U

NOS. 4-23-0977, 4-23-0978, 4-23-0979, 4-23-1398 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.R., A.J., Am.J., and P.J., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Ogle County |
| Plaintiff-Appellee, | ) | Nos. 23JA3 |
| v. | ) | 23JA4 |
| Ayonna J., | ) | 23JA5 |
| Respondent-Appellant). | ) | 23JA10 |
| | ) | |
| | ) | Honorable |
| | ) | Anthony W. Peska, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the motion to withdraw as appellate counsel and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent, Ayonna J., appeals from the trial court's adjudicatory and dispositional orders finding her child K.R. (born July 2010) to be abused and her children A.J. (born March 2019), Am.J. (born December 2021), and P.J. (born July 2023) to be neglected. (James J., the father of A.J., Am.J., and P.J., is not a party to this appeal.)

¶ 3    Appellate counsel appointed to represent respondent on appeal moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the ground no issue of arguable merit

can be raised on appeal. After examining the record on appeal, the motion to withdraw, and counsel's brief, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                      A. Juvenile Petitions and Shelter Care Hearings

¶ 6                              1. *K.R., A.J., and Am.J.*

¶ 7            In March 2023, the Illinois Department of Children and Family Services (DCFS) received a hotline report after officers from the Ogle County Sheriff's Office found K.R. alone outside of a slot parlor. She told officers she escaped from her home after being struck and kicked by respondent for obtaining a cell phone and contacting her biological father, Zavorious E., who lives in Texas. Both K.R. and Zavorious contacted the police following the incident with respondent. Officers observed K.R. was barefoot, had a bloody knee, and had a burn mark on her forearm and hand. However, they did not observe any obvious injuries from the hitting or kicking.

¶ 8            The next day, the State filed a petition for adjudication of wardship, alleging K.R. was an abused and neglected minor in that physical injury was inflicted upon her by respondent and her stepfather, James. The State specifically alleged (1) respondent repeatedly struck and kicked K.R. (count I) and (2) K.R. was forced to fast for three to seven days as a form of punishment (count III) (count II alleged abuse by James only).

¶ 9            The State filed separate petitions for adjudication of wardship for A.J. and Am.J. The petitions alleged the minors were neglected in that they were subject to an environment injurious to their welfare based on the alleged abuse of K.R.

¶ 10            After a shelter care hearing, the trial court found probable cause to believe the minors were abused and/or neglected. Finding immediate and urgent necessity based upon the

physical abuse and neglect, the court granted DCFS temporary guardianship and custody of the minors. Temporary custody of K.R. was later transferred to Zavorious.

¶ 11                                     2. *P.J.*

¶ 12          While the proceedings involving her older children were pending, respondent gave birth to P.J. Respondent did not notify her DCFS caseworker of P.J.'s birth. DCFS became aware of P.J.'s birth after receiving a hotline call and took protective custody of P.J. on July 11, 2023.

¶ 13          The next day, the State filed a petition for adjudication of wardship, alleging P.J. was in an environment injurious to her welfare as her siblings, A.J. and Am.J., were in the care of DCFS and her parents had not corrected the conditions that brought her siblings into care. After a shelter care hearing, the trial court found probable cause to believe P.J. was neglected and granted DCFS temporary guardianship and custody of the minor.

¶ 14                          B. Adjudications and Dispositions

¶ 15                          1. *K.R., A.J., and Am.J.*

¶ 16          In July 2023, the trial court commenced a two-day adjudicatory hearing, which concluded in August 2023. The State moved to admit an "indicated packet" created by DCFS during the investigation. Respondent objected, arguing the packet contained multiple levels of hearsay and more information than is admissible as an indicated report. See 705 ILCS 405/2-18(4)(b) (West 2022). The court reserved ruling on the objection until the end of the hearing.

¶ 17          Sergeant Jason Plumb of the Ogle County Sheriff's Office testified he was present for the March 2023 victim sensitive interviews with K.R. and A.J. at the Shining Star Children's Advocacy Center. He was also present for a second interview with K.R. in May 2023. All

interviews with the minors were recorded. Over respondent's objection, the trial court admitted the videotaped recordings of the interviews.

¶ 18    Plumb described the allegations of abuse against respondent and James relating to K.R.'s interview. K.R. disclosed being denied food and water, forced to fast, locked nightly in the basement, and hit with belts and pieces of wood by respondent and James. After an incident where James burned K.R. with a book he set on fire, neither respondent nor James took K.R. to a hospital for treatment of her burns. She also recalled the incident where respondent struck and kicked her repeatedly for contacting Zavorious with a cell phone.

¶ 19    Deputy Brian Ketter of the Ogle County Sheriff's Office testified he was part of the team that executed a search warrant at respondent's home. The search warrant was obtained to look for specific items discussed by K.R. in her victim sensitive interview, most of which were found and seized during the search.

¶ 20    Following testimony, the trial court returned to the issue of the investigative packet. The court declined to admit the packet but continued the hearing to allow DCFS to call a witness and try resubmitting the packet later.

¶ 21    In August 2023, the adjudicatory hearing resumed. Dr. Aram Perry, the acting deputy director of child protection for DCFS, testified he was involved in the case in his earlier role as an area administrator. In March 2023, he interviewed respondent at her home after K.R. ran away and was found by the police. Respondent confirmed K.R. ran away from home because she got in trouble for having a cell phone. She denied striking or kicking K.R. but was aware K.R. had left the home barefoot. Respondent stated K.R. was disciplined with spanking and fasting. When asked about the burn mark on K.R.'s arm and hand, respondent claimed it was caused by K.R. playing with fire. She admitted K.R. was not taken to the hospital for treatment.

Respondent also told Dr. Perry K.R. sleeps in the basement due to her behavioral issues. The other children have bedrooms upstairs. When Dr. Perry asked respondent in private if she had any issues with how James disciplined the children, she indicated she did not.

¶ 22      Dr. Perry also interviewed James. James openly described how he disciplined K.R. and admitted to whipping her with a leather belt. He claimed to not know how K.R. was burned on her arm and hand and attributed the burn to her "playing with fire."

¶ 23      Dr. Perry then testified about the investigative packet. He stated the packet contained only the work of DCFS and had no police reports, medical reports, or any outside vendor information attached. He confirmed the packet was made in the regular course of business of DCFS. Dr. Perry stated the packet was both an indicated report and an investigative packet. With this clarification, the trial court admitted the entire packet over respondent's objection.

¶ 24      The trial court found K.R. to be abused under counts I and II, but not count III. The court further found A.J. and Am.J. to be neglected. Thereafter, the court entered a dispositional order finding respondent unfit and unable to care for K.R., A.J., and Am.J. For K.R., the court granted custody and guardianship to Zavorious, and her case was closed. A.J. and Am.J. were made wards of the court, with DCFS appointed as the minors' guardian and custodian. In December 2023, A.J. and Am.J. were returned to respondent's custody with DCFS aftercare services.

¶ 25                                    2. *P.J.*

¶ 26      In October 2023, the trial court conducted an adjudicatory hearing for P.J. The State requested the court take judicial notice of the entire case files for K.R., A.J., and Am.J. Respondent objected to taking judicial notice of anything involving K.R.'s case, as her case was

closed and allegations relating to her were not identified in P.J.'s neglect petition. The court declined to take judicial notice of the entire case files but remained open to taking judicial notice of specified items from each case, including K.R.'s. Over respondent's objection, the court took judicial notice of the live testimony, exhibits, and adjudicatory orders from the three older children's cases. Also over respondent's objection, the court admitted the DCFS indicated report for P.J.'s case.

¶ 27    Jeffrey Scace, a DCFS child protection supervisor, testified on behalf of the primary investigator who was unable to attend the hearing due to illness. Scace stated he reviewed the indicated report and was familiar with the case. According to Scace, respondent and James were required to notify their DCFS caseworker when P.J. was born. Scace testified P.J. was taken into protective custody due to the pending DCFS investigation involving the three older minors and the parents' failure to notify DCFS of P.J.'s birth.

¶ 28    Following argument, the trial court found P.J. to be neglected. Thereafter, the court entered a dispositional order finding respondent unfit, made P.J. a ward of the court, and placed guardianship and custody with DCFS. In December 2023, P.J. was returned to respondent's custody with DCFS aftercare services.

¶ 29    This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31    We first address the delay in the issuance of this order. This case is subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), as a matter involving the custody of minors. Rule 311(a)(5) states, in part, "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." *Id.* In this case, counsel requested, and we granted, two extensions of time to file,

resulting in the matter not being submitted for disposition until after the 150-day deadline had passed. Under these circumstances, we find the existence of good cause for the disposition being issued outside the 150-day deadline.

¶ 32　　　　On appeal, appellate counsel moves to withdraw, arguing this case presents no potentially meritorious issues for review. See *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000) (holding *Anders* applies to parental rights cases). Appellate counsel states in his motion to withdraw he has read the record and found no issue of arguable merit for appeal. Notice of the motion to withdraw was provided to respondent. No response was filed. Counsel supported his motion with a brief identifying potential issues and arguments and explaining why he believes they would be frivolous. Specifically, counsel considered whether (1) K.R. and A.J.'s out-of-court statements were admissible and sufficiently corroborated, (2) the DCFS indicated reports were admissible, (3) judicial notice of items from K.R.'s case was properly taken at P.J.'s adjudicatory hearing, and (4) the trial court's adjudicatory findings were against the manifest weight of the evidence. For the reasons that follow, we agree this appeal presents no issues of arguable merit, grant the motion to withdraw, and affirm the court's judgment.

¶ 33　　　　　　　　　　　A. Minors' Out-of-Court Statements

¶ 34　　　　First, counsel asserts K.R. and A.J.'s videotaped out-of-court statements were admissible and sufficiently corroborated. The Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-18(4)(c) (West 2022)) provides a statutory exception to the general rule against hearsay in abuse and neglect cases involving minors. *In re A.P.*, 179 Ill. 2d 184, 196 (1997). Under this exception, prior statements "made by the minor relating to any allegations of abuse or neglect" are admissible to determine whether the minor is abused or neglected. 705 ILCS 405/2-18(4)(c) (West 2022). However, the statements alone cannot form the basis for a finding of neglect or

abuse unless the statements are sufficiently corroborated or subject to cross-examination. *A.P.*, 179 Ill. 2d at 196. A minor's statement is sufficiently corroborated where there is "independent evidence which would support a logical and reasonable inference that the act of abuse or neglect described in the hearsay statement occurred." *Id.* at 199.

¶ 35        Here, K.R.'s and A.J.'s videotaped statements were admissible, as their statements related to the abuse inflicted upon K.R. Furthermore, physical evidence seized from respondent's home, statements by respondent and James to DCFS, and A.J.'s interview all corroborated K.R.'s allegations of abuse. See *In re Z.C.*, 2022 IL App (1st) 211399, ¶ 48 ("[T]he out-of-court statement of one minor can corroborate the hearsay statement of another minor."). We agree any argument contesting the admissibility or corroboration of the minors' out-of-court statements would be entirely without merit.

¶ 36                                    B. Indicated Reports

¶ 37        Second, counsel determined the DCFS investigative packets were admissible as indicated reports. Indicated reports filed pursuant to the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2022)) are admissible in proceedings brought under the Act. 705 ILCS 405/2-18(4)(b) (West 2022). An indicated report is " 'any report of child abuse or neglect made to [DCFS] for which it is determined, after an investigation, that credible evidence of the alleged abuse or neglect exists.' " *In re J.C.*, 2012 IL App (4th) 110861, ¶ 22 (quoting 89 Ill. Adm. Code 300.20 (2012)). An indicated report has two components: (1) the report of suspected child abuse or neglect and (2) "the ultimate finding by a DCFS investigator that the report is supported by credible evidence." *Id.* ¶ 23.

¶ 38        At the first adjudicatory hearing, Dr. Perry identified the investigative packet as an indicated report. He further testified the report contained only the work of DCFS, meaning the

indicated findings and the reports of suspected abuse and neglect. Dr. Perry confirmed the information contained in the reports was made during the regular course of DCFS's business. The indicated report admitted at P.J.'s adjudicatory hearing likewise included only the indicated findings and reports compiled by DCFS.

¶ 39    We further agree with counsel the multiple levels of hearsay contained within the indicated reports were admissible. When admitting an indicated report into evidence, "lack of personal knowledge of the maker, may be proved to affect the weight to be accorded such evidence, but shall not affect its admissibility." 705 ILCS 405/2-18(4)(a) (West 2022). "This language necessarily indicates the document will contain additional levels of hearsay." (Internal quotation marks omitted.) *In re D.D.*, 2022 IL App (4th) 220257, ¶ 42. Therefore, we agree no meritorious argument could be raised challenging the admissibility of the indicated reports.

¶ 40                                    C. Judicial Notice

¶ 41    Third, counsel determined the trial court properly took judicial notice of the testimony, exhibits, and adjudicatory order from K.R.'s case at P.J.'s adjudicatory hearing. "[P]roof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2-18(3) (West 2022). Similarly, "a nonparty minor's statements of abuse or neglect are admissible as evidence of abuse or neglect of a sibling." *Z.C.*, 2022 IL App (1st) 211399, ¶ 46.

¶ 42    The record shows the trial court properly took judicial notice of items from K.R.'s case at P.J.'s adjudicatory hearing. Respondent was responsible for K.R. and P.J. at the relevant times in their respective cases. The fact K.R. was not named in P.J.'s neglect petition, her case was separate from P.J.'s case, or her case was closed prior to P.J.'s adjudicatory hearing, had no

bearing on whether the court could take judicial notice of the abuse suffered by K.R. Therefore, we agree with counsel any argument the court erred in taking judicial notice of portions of K.R.'s abuse proceedings would be without legal merit.

¶ 43                                    D. Adjudicatory Findings

¶ 44          Fourth, counsel determined the trial court's adjudicatory findings were not against the manifest weight of the evidence. At an adjudicatory hearing, the only issue to be resolved is "whether the minor is abused, neglected or dependent." 705 ILCS 405/2-18(1) (West 2022). Relevant here, section 2-3(2)(i) of the Act (*id.* § 2-3(2)(i)) defines an abused minor as a minor whose parent "inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function." Section 2-3(1)(b) of the Act (*id.* § 2-3(1)(b)) defines a neglected minor as any minor "whose environment is injurious to his or her welfare."

¶ 45          The State must prove the allegations of neglect or abuse by a preponderance of the evidence. *A.P.*, 2012 IL 113875, ¶ 17. On review, a finding of abuse or neglect will not be reversed unless it is against the manifest weight of the evidence. *In re D.M.*, 2016 IL App (1st) 152608, ¶ 19. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident. *A.P.*, 2012 IL 113875, ¶ 17.

¶ 46                                    1. *K.R.*

¶ 47          As to K.R., the record supports the findings of abuse alleged against respondent and James. As explained above, almost every allegation from K.R.'s interview was corroborated by other evidence uncovered during the investigation. Although respondent denied striking and kicking K.R., both K.R. and Zavorious contacted police to report the incident after K.R. escaped

- 10 -

from respondent's home. Respondent admitted K.R. ran away after getting in trouble for contacting Zavorious and she was aware K.R. left the home barefoot. Respondent was also aware of James's disciplinary tactics and indicated support of his actions towards K.R. in her DCFS interview.

¶ 48                                    2. *A.J. and Am.J.*

¶ 49            As to A.J. and Am.J., the record supports a finding of neglect based upon the abuse suffered by K.R. See *In re Z.R.*, 274 Ill. App. 3d 422, 427 ("A finding of abuse of one sibling establishes a *prima facie* case of neglect based upon an injurious environment to another."). Moreover, A.J. and Am.J. were present in the home while respondent and James perpetrated the abuse against the minors' sibling.

¶ 50                                    3. *P.J.*

¶ 51            As to P.J., the record supports a finding of neglect based upon the theory of anticipatory neglect. The anticipatory neglect doctrine allows the removal of a minor who is born after a finding of neglect or abuse by the parents of another child in the same household. See *In re Angela P.*, 2022 IL App (1st) 211092, ¶¶ 58-59 (explaining "a case of pure anticipatory neglect applies only if the minor at issue had not been born yet at the time of the" prior abuse or neglect by the parents). Respondent also failed to report P.J.'s birth to DCFS, despite being told to do so by her DCFS caseworker.

¶ 52            On this record, we agree any argument the adjudicatory findings were against the manifest weight of the evidence would be frivolous.

¶ 53                                    III. CONCLUSION

¶ 54            For the reasons stated, we grant appointed counsel's motion to withdraw and affirm the trial court's judgment.

¶ 55        Affirmed.