# Illinois Official Reports

## Appellate Court

---

*In re Aniylah B.*, 2016 IL App (1st) 153662

---

| | |
|---|---|
| Appellate Court Caption | *In re* ANIYLAH B., a Minor, Respondent-Appellee (The People of the State of Illinois, Petitioner-Appellee, v. Latasha C., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-3662 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | June 10, 2016<br><br>July 28, 2016<br>August 12, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-JA-1448; the Hon. Richard A. Stevens, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bruce H. Bornstein, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michele Lavin, and Nancy Kisicki, Assistant State's Attorneys, of counsel), for the People.<br><br>Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain, of counsel), guardian *ad litem*. |

JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Delort concurred in the judgment and opinion.

## OPINION

¶ 1 The respondent, Latasha C. (Latasha), appeals from an order of the circuit court of Cook County finding Aniylah B. (Aniylah), a neglected minor based on an injurious environment. On appeal, Latasha contends (1) the trial court erred when it took judicial notice of the transcript and exhibits admitted at a prior proceeding for temporary custody in the adjudication proceedings and (2) the trial court's finding that Aniylah was neglected based on an injurious environment was against the manifest weight of the evidence. Latasha does not challenge the trial court's dispositional order in this appeal.

¶ 2 BACKGROUND

¶ 3 Latasha and Marland B. (Marland) were married in April 2013.[1] Prior to their marriage, Latasha gave birth to the couples' children, Marlaisa B. and India B. Latasha had a son, Latristan C-H., from a prior relationship. The couple's third child, Aniylah, was born on November 26, 2014.

¶ 4 On December 8, 2014, the State filed a petition for adjudication of wardship alleging that Aniylah was a neglected minor, being a minor under the age of 18 years whose environment was injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2012)). The petition further alleged that Aniylah was an abused minor in that a family member or a person residing in the same home as Aniylah created a substantial risk of harm to her (705 ILCS 405/2-3(2)(ii) (West 2012)). The petition contained the following factual allegations:

"[Latasha] has three other minors who are in [the Department of Children and Family Services] custody with findings of physical abuse, abuse and/or neglect having been entered. [Latasha and Marland] have prior indicated reports for substantial risk of physical injury and cuts, welts and bruises. [Marland] has been convicted of aggravated battery to a child for beating [Aniylah's] sibling. Parents have not made substantial progress in services offered to assist them in reunifying with [Aniylah's] siblings. [Marland] is currently incarcerated."

¶ 5 A temporary custody hearing was held on December 8, 2014. The trial court granted temporary custody of Aniylah to the Department of Children and Family Services (DCFS). The order was entered without prejudice. Latasha was allowed supervised visitation with Aniylah.

¶ 6 On April 21, 2015, a contested hearing was held to resolve the issue of Aniylah's temporary custody. Following the hearing, the trial court determined that while reasonable efforts had been made to address the problems that led to Aniylah's siblings being placed in DCFS's custody, Latasha's efforts had not been sufficient to eliminate the urgent and immediate necessity for Aniylah's removal from her custody. The trial court awarded temporary custody of Aniylah to DCFS.

---

[1]Marland is not a party to this appeal.

¶ 7        Prior to the adjudication hearing on the petition for wardship of Aniylah, the State filed a motion requesting that the trial court take judicial notice of all non-hearsay sworn testimony from the April 21, 2015, temporary custody hearing and certain of the State's exhibits admitted into evidence at that hearing. The State prepared a redacted transcript of the April 21, 2015, hearing. Latasha filed objections to several portions of the redacted transcript on the grounds of hearsay and inaccuracies in the transcription. Latasha also objected to testimony addressing Aniylah's best interests as irrelevant as it was not at issue in an adjudication proceeding. Latasha objected to the admission of the October 1, 2014, DCFS service plan and the admission of the September 10, 2014, Cook County Juvenile Court Clinic Report (CCJC report), containing an evaluation of Aniylah's sibling, India B., on the grounds of hearsay. Latasha also maintained that the documents' probative value to the issue of abuse or neglect suffered by Aniylah was outweighed by the unfair prejudice to Latasha that would result from their admission into evidence at the adjudicatory hearing.

¶ 8        On October 26, 2015, prior to the start of the adjudicatory hearing, the trial court heard argument on the State's motion for judicial notice and Latasha's objections. The State had further redacted the April 21, 2015, transcript, removing the hearsay testimony objected to by Latasha. The trial court acknowledged that best interests was not the evidentiary standard applicable to an adjudicatory hearing, but the court ruled that the testimony was relevant as it provided factual information regarding the risk to the minors and explained why DCFS removed Aniylah from Latasha's custody. The court sustained Latasha's objections to the inaccuracies in the transcript, which were then corrected.

¶ 9        Turning to the State's exhibits, the trial court ordered the State to lay a foundation for the admission of the DCFS October 1, 2014, service plan, and for the admission of the September 10, 2014, CCJC report. Latasha stipulated to the foundation for their admission but did not withdraw her unfair prejudice objections.

¶ 10       The trial court granted the State's motion and took judicial notice of the October 1, 2014, service plan, the September 10, 2014, CCJC report, and the redacted transcript, and admitted them into evidence in the adjudication hearing. The court overruled Latasha's objections based on the unfair prejudice, stating that as the trier of fact it was "clearly capable of not being overly prejudiced by the statements contained in these exhibits." The court stated it would accord less weight to those statements in the October 1, 2014, service plan and the September 10, 2014, CCJC report that constituted hearsay or double hearsay.

¶ 11       At the adjudication hearing, the State presented the testimony of Debra Woodson, a DCFS supervisor, and Amy Gordon, a DCFS caseworker. Their testimony is summarized below.

¶ 12       In April 2012, Ms. Woodson was assigned to Latasha's case, which at that time concerned abuse and neglect of her minor children, Latristan C-H., Marlaisa B. and later, India B., who was born in November 2012.[2] Prior to Aniylah's birth on November 26, 2014, Ms. Woodson received an e-mail from Latasha's attorney, Steven Pick, informing her that Latasha's unborn child would be under the short-term guardianship of Ollie Wright. On December 1, 2014, Ms. Woodson received voicemails from Latasha and attorney Pick informing her that Aniylah was with Latasha, and they were at Ms. Wright's home in Detroit, Michigan. Through the DCFS authorities in Michigan, Ms. Woodson verified that Aniylah was at Ms. Wright's residence.

---

[2]The minors' names are spelled differently throughout the record.

Ms. Woodson confirmed that Marland began serving his sentence for battery to a child on November 18, 2014.

¶ 13    Ms. Gordon testified that Latristan C-H. and Marlaisa B. came into the DCFS system in 2012, based on allegations of physical abuse to Latristan C-H. When India B. was born on November 29, 2012, she too was brought into the DCFS system since Latasha had not completed her services. In October 14, 2014, Ms. Gordon prepared a service plan for the three minors. The plan rated Latasha unsatisfactory in that she lacked an understanding of the effect of domestic violence on her family, she did not take advantage of the services available to her and had not come to terms with the original reason the case came into the system. The goal for Latristan C-H. and Marlaisa B. was changed from a return home to termination of parental rights, while the goal for India B. remained a return home.

¶ 14    Ms. Gordon focused on Latasha's ability to keep Aniylah safe. Latasha showed poor judgment in light of her refusal to acknowledge the fact of prior domestic violence between Marland and her, Marland's anger issues, and that Latasha had remained married to Marland.[3] Moreover, Latasha was still in therapy, was not consistently participating in drug testing, and her participation in the domestic violence services was superficial. As of December 8, 2014, when the question of temporary custody for Aniylah was being addressed, Latasha's visitation with India B. remained supervised because she still had not demonstrated that India B. would be safe with her.

¶ 15    After the State and Aniylah's attorney and guardian *ad litem* rested, Latasha moved for the admission of three exhibits in her case: a November 19, 2014, letter to Ms. Gordon and Ms. Woodson from attorney Pick, informing them of Latasha's care plan for the child she was expecting; a printout of a December 2, 2014, e-mail sent by attorney Pick to Ms. Gordon and Ms. Woodson, explaining that Aniylah was now in Illinois due to Latasha having to testify in a lawsuit; and the short-term guardianship document, executed by Latasha and Marland on November 12, 2014, appointing Ollie Wright, guardian for Aniylah.

¶ 16    Following closing arguments, the trial court found that the State had met its burden of proof for a finding of neglect based on an injurious environment, but not for abuse based on substantial risk of injury. The court explained that the finding of neglect was based on the theory of anticipatory neglect, which is applicable when a newborn child's previously born siblings are in DCFS guardianship or custody, and the parent or parents have not made sufficient progress in reunification with those children or to at least have unsupervised visits with them.

¶ 17    The court rejected the argument that anticipatory neglect was not applicable because Marland was incarcerated prior to Aniylah's birth and no allegations of abuse had been made against Latasha. The court had to determine if Aniylah would be safe with Latasha. The September 10, 2014, CCJC report raised serious concerns about Latasha's judgment and questioned her ability to protect India B., who was then just under 2 years old. The court did not consider the trip to and from Michigan in its determination of neglect, stating that the finding was really based on "the fact that [Latasha] hadn't made sufficient progress in the reunification services for Latristan, Marlisa and India to be adequately able to, in this Court's

_____

[3]During the adjudication hearing, Latasha's attorney informed the trial court that Latasha and Marland were now divorced. No date was given, and no documentation was introduced at the hearing evidencing a judgment for dissolution of the parties' marriage.

- 4 -

belief, protect the newborn Aniylah" even though Marland, the perpetrator of the abuse was incarcerated prior to her birth.

¶ 18    Latasha appeals the trial court's October 26, 2015, order finding Aniylah to be a neglected minor.

¶ 19                                    ANALYSIS

¶ 20               I. Admission of the State's Exhibits and the Transcript
                          From the Temporary Custody Hearing

¶ 21                               A. Standard of Review

¶ 22    We review the admission of evidence at an adjudicatory hearing for an abuse of discretion. *In re A.W.*, 231 Ill. 2d 241, 253-54 (2008). The admission of evidence by the trial court will not be reversed absent an abuse of discretion. *In re A.W.*, 231 Ill. 2d at 254. A trial court abuses its discretion when its ruling is fanciful, unreasonable, or when no reasonable person would adopt the trial court's view. *In re D.M.*, 2016 IL App (1st) 152608, ¶ 15.

¶ 23                                  B. Discussion

¶ 24    Latasha maintains, first, that "in a matter as constitutionally significant as the custody of one's child, the transcript of a temporary custody hearing should not be admissible in an adjudicatory hearing. This is because the evidence and findings are not relevant to the trial court's determination at the adjudication." The transcript and exhibits from the April 21, 2015, temporary custody hearing were admitted pursuant to section 2-18(6) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-18(6) (West 2012)). Section 2-18(6) provides as follows:

> "In any hearing under this Act, the court may take judicial notice of prior sworn testimony or evidence admitted in prior proceedings involving the same minor if (a) the parties were either represented by counsel at such prior proceedings or the right to counsel was knowingly waived and (b) the taking of judicial notice would not result in admitting hearsay evidence at a hearing where it would otherwise be prohibited." 705 ILCS 405/2-18(6) (West 2012).

In addition, the rules of evidence in civil proceedings are applicable to adjudication hearings. See 705 ILCS 405/2-18(1) (West 2012). Both section 2-18(1) and section 2-18(6) provide significant protection to assure only the admission of relevant and competent evidence from a prior proceeding at the adjudication hearing.

¶ 25    Next, Latasha maintains that the trial court abused its discretion when it admitted hearsay testimony from the transcript of the April 21, 2015, hearing on temporary custody of Aniylah.

¶ 26    All of the parties were represented by counsel at the April 21, 2015, hearing. In its motion pursuant to section 2-18(6) of the Act, the State requested that the trial court take judicial notice of all "nonhearsay sworn testimony" from the April 21, 2015, hearing. The State redacted all the hearsay testimony from the transcript to which Latasha objected. Therefore, Latasha has forfeited any further hearsay objection to the admission of the April 21, 2015, transcript. *In re William H.*, 407 Ill. App. 3d 858, 869-70 (2011).

¶ 27    Next, Latasha maintains that the transcript testimony discussing Aniylah's best interests was error because the minor's best interests was not the evidentiary standard applicable to the adjudicatory hearing, and, therefore, its admission was irrelevant and unfairly prejudicial to Latasha. In considering Latasha's objections, the trial court acknowledged best interests was

not the applicable standard at the adjudicatory hearing. The court overruled Latasha's objections to the best interests testimony finding that it explained why DCFS took the actions it did in seeking immediate custody of Aniylah. The trial court's ruling was not so unreasonable as to constitute an abuse of discretion.

¶ 28    Next, Latasha maintains the admission of the entire April 21, 2015, transcript prejudiced her because a significant portion of the hearing concerned the short-term guardianship of Aniylah by Ms. Wright and whether that plan was violated by Latasha. Latasha argues that both the State and Aniylah's guardian *ad litem* referred to that testimony in their closing arguments and the trial court considered this testimony in its determination. However, the court specifically stated that it was not considering Latasha's trips to and from Michigan in its determination of anticipatory neglect.

¶ 29    Next, Latasha maintains that the admission of the DCFS October 1, 2014, service plan and the September 10, 2014, CCJC report for India B. was error because both exhibits contained hearsay and pertained to Aniylah's siblings, and, therefore, were irrelevant and were unfairly prejudicial to her.

¶ 30    Client service plans are admissible under section 2-18(4)(a) of the Act, a variation of the business record exception to the hearsay rule. *In re A.B.*, 308 Ill. App. 3d 227, 235-36 (1999); 705 ILCS 405/2-18(4)(a) (West 2012). In addition, Latasha stipulated to the foundation necessary for the admission of the exhibits and preserved only her objection based on unfair prejudice. Moreover, section 2-18(3) of the Act provides that:

> "In any hearing under this Act, proof of the abuse, neglect or dependency of one minor shall be admissible evidence on the issue of abuse, neglect or dependency of any other minor for whom the respondent is responsible." 705 ILCS 405/2-18(3) (West 2012).

¶ 31    The fact that the exhibits referred to Aniylah's siblings and were prepared before her birth did not render them irrelevant or untimely. Both exhibits contained evidence as to Latasha's inability to protect her children from abuse and therefore were relevant to whether Latasha was capable of protecting her newborn, Aniylah, in light of her failure to do so with her other children. Moreover, there was testimony that as of December 8, 2014, when the issue of temporary custody of Aniylah was first before the trial court, Latasha's visits with India were still required to be supervised, almost two years after India was placed in DCFS custody.

¶ 32    Latasha's reliance on *In re J.C.*, 2012 IL App (4th) 110861, and *In re J.G.*, 298 Ill. App. 3d 617 (1998) is misplaced as neither case supports her argument that the transcript and exhibits from a temporary custody hearing should not be admissible at the adjudicatory hearing. In *In re J.C.*, the reviewing court held that the entire DCFS case file could not be admitted under section 2-18(4)(b) of the Act. *In re J.C.*, 2012 IL App (4th) 110861, ¶ 23. Under that section, "[a]ny indicated report filed pursuant to the Abused and Neglected Child Reporting Act shall be admissible in evidence." 705 ILCS 405/2-18(4)(b) (West 2010); 325 ILCS 5/1 *et seq.* (West 2010). The court determined that the evidence contained far more information than was necessary to show evidence of an "indicated report" and more information than was relevant to the allegations against the respondent mother. Therefore the admission of the entire DCFS file was erroneous. *In re J.C.*, 2012 IL App (4th) 110861, ¶ 24. In *In re J.G.*, the reviewing court held that section 2-18(4)(a), under which admission of records relating to a minor could be admitted in an abuse or neglect proceeding, did not permit the trial court to take judicial notice of the entire court file. *In re J.G.*, 298 Ill. App. 3d at 629.

¶ 33    Neither *In re J.C.*, nor *In re J.G.*, concerned the admission of transcripts and exhibits from a prior hearing under section 2-18(6) of the Act.[4] Moreover, in *In re J.G.*, the court recommended a procedure similar to that followed by the State in this case, *i.e.*, the State should make a proffer of the material requested to be noticed and giving defense counsel time to object to the request. *In re J.G.*, 298 Ill. App. 3d at 629. In any event, such an error does not require reversal. Despite the alleged error in the admission of the evidence, in light of the sufficiency of the remaining evidence and the lack of prejudice to the party, this court affirmed the finding of neglect (*In re J.C.*, 2012 IL App (4th) 110861, ¶ 33) and the findings of unfitness and termination of parental rights (*In re J.G.*, 298 Ill. App. 3d at 629).

¶ 34    None of the trial court's rulings in connection with the admission of the evidence from the April 21, 2015, temporary custody hearing were arbitrary, fanciful, or so unreasonable that they amounted to an abuse of discretion. We conclude that the trial court did not abuse its discretion in the admission of the redacted transcript and the exhibits from the April 21, 2015, temporary custody hearing at the adjudication hearing.

¶ 35                        II. Sufficiency of the Evidence
¶ 36                            A. Standard of Review
¶ 37    A trial court's ruling regarding neglect or abuse will not be disturbed unless it is against the manifest weight of the evidence. *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 27. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 27.

¶ 38    Under the manifest weight of the evidence standard, the reviewing court gives deference to the trial court as the finder of fact since it is in the best position to observe the conduct and the demeanor of the parties and the witnesses and has a degree of familiarity with evidence that a reviewing court cannot possibly obtain. *In re A.W.*, 231 Ill. 2d 92, 102 (2008). As the reviewing court, we must not substitute our judgment for that of the trial court regarding the credibility of the witnesses, the weight to be given the evidence, or the inferences to be drawn. *In re A.W.*, 231 Ill. 2d at 102.

¶ 39                              B. Discussion
¶ 40    Latasha maintains that the evidence was insufficient for a finding of anticipatory neglect in that (1) Aniylah was not yet born at the time of the incident that lead to the removal of her siblings from Latasha; (2) Marland, not Latasha, was the perpetrator of the abuse, and he had been removed from the home due to his three-year prison sentence and the couple's divorce; (3) Latasha was involved in and compliant with the court-ordered services; and (4) Aniylah was born healthy and without special needs, indicating that Latasha received the necessary and proper prenatal care.

¶ 41    It is the State's burden to prove by a preponderance of the evidence that the minor was neglected. *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 31. Preponderance of the evidence is defined as " '[e]vidence which is of greater weight or more convincing than the evidence

_____

[4]Based on *In re J.C.* and *In re J.G.*, Latasha asks that this court similarly interpret section 2-18(4)(b) as prohibiting the taking of judicial notice of testimony and exhibits from a temporary custody hearing. That section was not at issue in the present case. Latasha's reference should have been to section 2-18(6), providing for judicial notice of evidence from prior proceedings.

which is offered in opposition to it.' " *Board of Education of the City of Chicago v. Johnson*, 211 Ill. App. 3d 359, 364 (1991) (quoting Black's Law Dictionary 1064 (5th ed. 1979)). The preponderance standard of proof "allocates the risk of error roughly equally between the litigants [citation], reflecting the view that the interests at stake are of relatively equal societal importance [citation]." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 42    In the present case, Aniylah was found to be a neglected minor based on an injurious environment. While neglect has been defined as the failure to exercise the care that circumstances justly demand, our supreme court has recognized that the meaning of neglect is fluid, which takes in unintentional as well as intentional disregard of duty. *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). Whether neglect exists depends on the circumstances. *In re Arthur H.*, 212 Ill. 2d at 463. Likewise, the term "injurious environment," cannot be defined with particularity, but has been interpreted to include " 'the breach of a parent's duty to ensure a "safe and nurturing shelter" for his or her children.' " *In re Arthur H.*, 212 Ill. 2d at 463 (quoting *In re N.B.*, 191 Ill. 2d 338, 346 (2000), quoting *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995)). Accordingly, "[c]ases involving allegations of *** neglect are *sui generis*, and must be decided based upon their unique facts." *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 31; see *In re N.B.*, 191 Ill. 2d at 346 (neglect and injurious environment rulings are fact-driven).

¶ 43    In the present case, the trial court's finding that Aniylah was a neglected minor was premised on the theory of anticipatory neglect. "Under the anticipatory neglect theory, the State seeks to protect not only children who are the direct victims of neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child." *In re Arthur H.*, 212 Ill. 2d at 468. "Although the neglect of one child does not conclusively show the neglect of another child, the neglect of one minor is admissible as evidence of the neglect of another minor under a respondent's care." *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 30.

¶ 44    " 'To determine whether a finding of anticipatory neglect is appropriate, the trial court should consider the current care and condition of the child in question and not merely the circumstances that existed at the time of the incident involving the child's sibling.' " *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 30 (quoting *In re J.P.*, 331 Ill. App. 3d 220, 235 (2002)). Under the theory of anticipatory neglect, where there is evidence of prior neglect by the parents, the trial court should not be deterred from acting until another child is injured. *In re Arthur H.*, 212 Ill. 2d at 477.

¶ 45    This case began in 2012 with allegations of physical abuse of Latristan C-H. by Marland resulting in the removal of Latristan C-H. and Marlaisa B. from Marland's and Latasha's custody. Upon the birth of India in November 2012, she too was removed from their custody. The record reflects that in April 2013, after the three minors had been removed from their custody, Latasha and Marland were married. By the time of Aniylah's birth, two years after her siblings were removed, Latasha remained in therapy, was not consistently participating in drug testing, and her participation in the domestic violence services was superficial. Significantly, Latasha still failed to appreciate the harm domestic violence did to her children. Just two months prior to Aniylah's birth, the DCFS October 14, 2014, service plan found Latasha's progress was unsatisfactory and changed the goal for Latristan C-H. and Marlaisa B. from a return home to termination of parental rights. As of December 8, 2014, when Aniylah was only

two weeks old, Latasha's weekly visitation with India B. was still supervised because she had not demonstrated that India would be safe with her.

¶ 46      After careful consideration of the evidence in this case, we conclude that the trial court's determination that the State had proved by a preponderance of the evidence that Aniylah was a neglected minor due to her injurious environment was not against the weight of the evidence. As the opposite conclusion is not clearly evident, the trial court's finding of neglect is affirmed.

¶ 47                           CONCLUSION

¶ 48      The judgment of the circuit court is affirmed.

¶ 49      Affirmed.