NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230723-U

NOS. 4-23-0723, 4-23-0724, 4-23-0725 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 1, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Jan. W., Jak. R., and H.P., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos. 21JA43 |
| v. | ) | 21JA44 |
| Shaquilla W., | ) | 21JA45 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, finding no issue of arguable merit could be raised on appeal.

¶ 2     In February 2023, the State filed a motion to terminate the parental rights of respondent mother, Shaquilla W. (Mother), to her three minor children, Jan. W. (born January 2013), Jak. R. (born February 2016), and H.P. (born November 2018). The trial court found Mother to be an unfit parent pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and it was in the children's best interests to terminate Mother's parental rights.

¶ 3     In October 2023, appellate counsel filed a motion to withdraw as counsel for the consolidated cases and a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967),

arguing no meritorious issue could be raised on appeal. For the following reasons, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5        On June 16, 2021, the State filed a petition for adjudication of wardship alleging Jan. W., Jak. R., and H.P. were neglected and/or abused minors whose environment was injurious to their welfare pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)). The State alleged Mother (1) was unsuccessfully discharged from intact services, (2) was physically abusing Jan. W., (3) had deteriorating mental health issues requiring hospitalization, which she did not report to her caseworker, and (4) was in an ongoing abusive relationship. The trial court entered a temporary custody order, which suspended visitation. (An amended petition, filed in July 2021, named three putative fathers. None of the fathers are parties to this appeal.)

¶ 6        In December 2021, the trial court held a hearing on the petition for adjudication. An adjudicatory order entered after the hearing found the minors were in an environment injurious to their welfare. A dispositional order entered on January 25, 2022, found Mother was unfit to care for, protect, train, educate, supervise, or discipline the minors and made the minors wards of the court, with custody placed with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS). The order also stated there was to be no visitation until further order of the court.

¶ 7        In February 2023, the State filed a motion for termination of parental rights. As to Mother, the petition alleged she was an unfit mother for failing to (1) make reasonable efforts to correct the conditions which were the basis for removal of the minors (750 ILCS 50/1(m)(i) (West 2022)), (2) maintain a reasonable degree of interest, concern, or responsibility as to the

minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), and (3) make reasonable progress towards the return of the minors during any nine month period after the adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2022)). The State filed a separate motion stating the nine-month periods in question were December 18, 2021, to September 18, 2022, and September 19, 2022, to June 19, 2023.

¶ 8                                              A. Unfitness Hearing

¶ 9             The trial court held an unfitness hearing in August 2023. At the beginning of the hearing, the State asked the court "to take judicial notice of its own records, including the original petition in this matter, the adjudicatory hearing of December 17, 2021, the dispositional hearing order of January 25, 2022, as well as the permanency orders in—after that." The court acknowledged it could take judicial notice of its own records and took "notice of those specific items contained within these files."

¶ 10            Alison Ketsenburg testified she was a public service administrator for DCFS and acted as a supervisor for the children's cases. Ketsenburg testified the children came into care in summer 2021, "[m]ainly due to mother's mental health and substance abuse." Ketsenburg approved a May 2022 service plan, which she agreed was "created in the regular course of DCFS business." According to the service plan, Mother was required to complete mental health services, parenting classes, substance abuse services, and an integrated assessment. Mother completed the integrated assessment. For mental health services, Mother was "seeing somebody," but it was inconsistent as she frequently missed appointments and was "sporadic" in taking her medication. Mother was referred for a parenting class, but she did not attend standard classes due to her mental health, and she refused a referral for a one-on-one class. Visitations remained suspended by the trial court throughout the life of the case, and Mother was ranked

- 3 -

"unsatisfactory" for parenting tasks. As to substance abuse, Mother did 28 days' inpatient treatment but failed to comply with outpatient recommendations. Ketsenburg testified Mother admitted to her caseworker she was using alcohol and drugs after her inpatient treatment.

¶ 11 Nykosi Simmons testified she had been the caseworker for the minors since June 2022. Simmons created the December 2022 service plan "in the regular course of DCFS business." The December 2022 service plan added domestic violence services to Mother's assigned tasks. Mother was not involved in individual mental health counseling at this point, and although she reported she was taking her medication, Simmons could not confirm her statement. Mother briefly attended one-on-one parenting counseling but was rated unsatisfactory for parenting services. Mother did not participate in a scheduled assessment for substance abuse services. She submitted to two drug screenings, which were negative, but she refused to complete in-person screenings with Simmons. Mother reported to Simmons she was in domestic violence counseling, but she did not sign any releases and Simmons was unable to confirm her participation.

¶ 12 Simmons created another service plan in June 2023, which was "created in the regular course of DCFS business." There were no changes to Mother's required tasks in the new service plan. Simmons attempted to direct Mother to mental health services, but she told Simmons she "would not be participating in any services." Mother had been discharged from her parenting classes based on her lack of participation. She reported she was homeless, but she did not want to discuss her housing with Simmons. Mother was not participating in substance abuse services or submitting to drug testing. Mother informed Simmons "she would not be cooperating with any recommendations from [DCFS] until she got her children back."

¶ 13        Over respondent's objection, the trial court found the proper foundation was laid for the three service plans, and the three service plans were admitted into evidence.

¶ 14        Mother presented no evidence and waived argument.

¶ 15        The trial court determined:

> "[M]other did not ever really make any efforts or progress toward any type of a return home goal for the few services that she was involved in, did not help reach a return home goal, did not solve any of the problems which were the reason for the cases being brought into court in the first place."

The court noted visits were never reinstated, and Mother did not make a request for visits to be reinstated. The court found Mother unfit pursuant to the allegations of the petition.

¶ 16                        B. Best Interests

¶ 17        The trial court proceeded directly to the best interests hearing.

¶ 18        Simmons testified Jan. W. and Jak. R. were living together in a traditional foster placement. The minors appeared very bonded with the foster mother. Simmons explained one of the minors asked if they would be able to change their names if they were adopted. The minors interacted well with the other children in the home and felt they were a part of the family. The minors attended school and scheduled medical appointments. Simmons testified all of the minors' needs were met. The foster mother wished to provide the minors with a permanent placement.

¶ 19        H.P. was in a separate traditional foster placement, where he lived with his foster mother and her biological son. H.P. referred to his foster mother as "mom" and her son as his "big brother." Simmons observed H.P. was always very happy when she visited. H.P. started

kindergarten the previous year, and the foster mother made sure he attended school and any medical appointments. The foster mother wished to provide a permanent placement for H.P.

¶ 20    Mother presented no evidence and waived argument.

¶ 21    The trial court found it was in the best interests of the minors to terminate Mother's parental rights.

¶ 22    This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24    On appeal, counsel moves to withdraw as counsel for Mother on the consolidated cases. Counsel has filed an affidavit showing due diligence in serving Mother a copy of her motion to withdraw. Mother has not responded to counsel's motion to withdraw.

¶ 25    We initially comment on the delay in the issuance of this order. As a matter addressing the custody of the minor children, this case is subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), requiring the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. Mother filed her initial notice of appeal on August 21, 2023, and every effort was made to comply with the January 18, 2024, deadline under Rule 311(a)(5). However, procedural issues precluded us from doing so as it was necessary to ensure there was an adequate record of due diligence in serving Mother.  Accordingly, we find good cause exists for the delay.

¶ 26                    A. *Anders* Motions

¶ 27    The *Anders* procedure pertaining to an appellate counsel's motion to withdraw applies to findings of parental unfitness and termination of parental rights. Under *Anders*, a brief must accompany counsel's motion to withdraw, outlining any issues in the record which might arguably support the appeal, explaining why counsel finds those issues frivolous, and concluding

that the case presents no viable grounds for appeal. *In re S.M.*, 314 Ill. App. 3d 682, 685, 732 N.E.2d 140, 143 (2000). The appellate court will then review the record to determine whether the available arguments are wholly without merit. *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 10, 51 N.E.3d 1109.

¶ 28 Counsel identifies several potentially appealable issues she reviewed. As to the unfitness hearing, counsel lists as possible issues: (1) the trial court erred in allowing certain evidence, including (a) the prior court record through judicial notice and (b) the three service plans; (2) Mother received ineffective assistance of trial counsel where counsel failed to object to judicial notice of the prior court record or the admission of the service plans; and (3) the unfitness finding was against the manifest weight of the evidence. Counsel also examined whether it was arguable the best interests finding was against the manifest weight of the evidence. Counsel determined each of these potential claims would be frivolous. After reviewing the record and the applicable law, we agree.

¶ 29                                     B. Fitness Hearing

¶ 30 The Juvenile Court Act and the Adoption Act govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights. The State must first show the parent is an "unfit person," and then it must show terminating parental rights serves the best interests of the child. *D.F.*, 201 Ill. 2d at 494-95 (citing the Adoption Act (750 ILCS 50/1(D) (West 1998)) and the Juvenile Court Act (705 ILCS 405/2-29(2) (West 1998))).

¶ 31 " 'The State must prove parental unfitness by clear and convincing evidence.' " *In re A.L.*, 409 Ill. App. 3d 492, 500, 949 N.E.2d 1123, 1129 (2011) (quoting *In re Jordan V.*,

347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004)). The Adoption Act provides several grounds on which a trial court may find a parent unfit. Here, the court determined Mother was unfit because she (1) failed to make reasonable efforts to correct the conditions which were the basis for removal of the minors, (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare, and (3) failed to make reasonable progress towards the return of the minors during any nine month period after the adjudication of neglect.

¶ 32                                    1. *Admission of Evidence*

¶ 33            Termination proceedings under the Juvenile Court Act employ the general rules of civil practice, including the Illinois Rules of Evidence, unless the Juvenile Court Act specifically governs the issue. *In re A.B.*, 308 Ill. App. 3d 227, 234, 719 N.E.2d 348, 354 (1999); see *In re M.D.*, 2022 IL App (4th) 210288, ¶ 75, 193 N.E.3d 933 (holding fitness hearings are "governed by the Illinois Rules of Evidence"). We review the trial court's admission or denial of evidence for an abuse of discretion. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006). "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24, 89 N.E.3d 296.

¶ 34                                    a. Judicial Notice

¶ 35            When determining whether a parent is unfit, it is appropriate for the trial court to take notice of "certain facts relating to how the case has reached the point at which termination of parental rights is sought by the State." *In re J.G.*, 298 Ill. App. 3d 617, 628, 699 N.E.2d 167, 175 (1998); see *A.B.*, 308 Ill. App. 3d at 237 (stating the trial court may take judicial notice of matters of record in its own proceedings). However, this court has been clear "wholesale judicial

notice of everything that took place prior to the unfitness hearing is unnecessary and inappropriate." *J.G.*, 298 Ill. App. 3d at 629. This court in *J.G.* laid out the proper procedure for a request for judicial notice at termination proceedings:

> "If the State wishes the trial court to take judicial notice of portions of the court file in a particular unfitness proceeding, the State can make a proffer to the court of the material requested to be noticed. Defense counsel should then be allowed an opportunity to object to the State's request. Such a procedure would serve to focus the trial court's attention on only those matters that are admissible under the rules of evidence, as well as make it easier for a reviewing court to determine what the trial court actually relied on in making its decision of unfitness." *J.G.*, 298 Ill. App. 3d at 629.

¶ 36 In this case, the State requested the trial court take judicial notice of "the original petition in this matter, the adjudicatory hearing of December 17, 2021, the dispositional hearing order of January 25, 2022, as well as the permanency orders in—after that." The court responded it would take judicial notice of "those specific items contained within these files." Mother's counsel had the opportunity to respond to the State's request and took no action. The State followed the procedure for requesting judicial notice of prior proceedings in termination cases, and the court only took notice of those limited documents requested. As appellate counsel contends, it would be frivolous to argue the court erred by taking "wholesale judicial notice" of the prior record. *J.G.*, 298 Ill. App. 3d at 629.

¶ 37 b. Admission of Service Plans

¶ 38 "Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within a recognized exception."

*People v. Cloutier*, 178 Ill. 2d 141, 154, 687 N.E.2d 930, 936 (1997). The Juvenile Court Act specifically provides a variation on the business records exception to the hearsay rule in section 2-18(4)(a) of the Juvenile Court Act (705 ILCS 405/2-18(4)(a) (West 2022)) for the admission of service plans. *In re Aniylah B.*, 2016 IL App (1st) 153662, ¶ 30, 61 N.E.3d 216. Under the exception of section 2-18(4)(a), for a service plan to be admissible, "the proponent must establish a foundation showing that the writing was (1) made as a memorandum or record of the event, (2) made in the ordinary course of business, and (3) made at the time of the event or within a reasonable time thereafter." *A.B.*, 308 Ill. App. 3d at 235.

¶ 39        For each of the three service plans admitted in this case, the State elicited testimony from the respective witnesses. For the May 2022 service plan, Ketsenburg testified the service plan was "created in the regular course of DCFS business" and "specifically for DCFS business purposes," was "true and accurate," and was created "about the time that the events occurred." For the December 2022 service plan, Simmons testified the service plan was created in the "regular course of DCFS business," was a "true and accurate representation," and was "created on or around the time" of the events. For the June 2023 service plan, Simmons again testified the service plan was created "in the regular course of DCFS business," was a "complete and accurate record," and was "created about the time that the events contained within occurred."

¶ 40        Therefore, for each of the three service plans, the State established the proper foundation for their admission as evidence under the hearsay exception in section 2-18(4)(a). Any argument to the contrary would be frivolous.

¶ 41                          2. *Ineffective Assistance*

¶ 42        "While the right to counsel in juvenile proceedings is statutory and not constitutional, Illinois courts apply the standard utilized in criminal cases to gauge the

effectiveness of counsel in juvenile proceedings." (Internal quotation marks omitted.) *In re Ch. W.*, 399 Ill. App. 3d 825, 828, 927 N.E.2d 872, 875 (2010). A claim of ineffective assistance of counsel during termination proceedings is therefore analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ch. W.*, 399 Ill. App. 3d at 828. "To prevail on such a claim, a [parent] must show both that counsel's performance was deficient and that the deficient performance prejudiced the [parent]." (Internal quotation marks omitted.) *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10, 93 N.E.3d 664.

¶ 43 Here, appellate counsel discusses the possible claim of ineffective assistance of trial counsel for failing to object to (1) the judicial notice of documents from the trial court record and (2) the admission of the service plans under section 2-18(4)(a) for lack of foundation. As discussed, the judicial notice of the prior court record and the admission of the service plans were proper. Any objection by counsel would have been properly overruled. Thus, counsel was not ineffective for failing to object. See *People v. Edwards*, 195 Ill. 2d 142, 165, 745 N.E.2d 1212, 1225 (2001) ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection.") Any argument to the contrary on appeal would be meritless.

¶ 44                                3. *Finding of Unfitness*

¶ 45 This court pays " 'great deference' " to a trial court's fitness finding " 'because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility.' " *A.L.*, 409 Ill. App. 3d at 500 (quoting *Jordan V.*, 347 Ill. App. 3d at 1067). We "will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *A.L.*, 409 Ill. App. 3d at 500.

¶ 46    Although the court found various bases for unfitness, "sufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 83, 19 N.E.3d 227; see *Daphnie E.*, 368 Ill. App. 3d at 1064 ("A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act." (citing *In re D.D.*, 196 Ill. 2d 405, 422, 752 N.E.2d 1112, 1122 (2001))). We focus on Mother's failure to make reasonable progress during the period of September 19, 2022, to June 19, 2023.

¶ 47    As we have previously explained, "reasonable progress is an objective standard," measuring whether "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original and internal quotation marks omitted.) *F.P.*, 2014 IL App (4th) 140360, ¶ 88. The record shows Mother never consistently participated in any of the required services. In fact, Mother specifically informed Simmons she would not be participating in any services and was uncooperative in general. Although Mother had started one-on-one parenting classes, she was discharged in January 2023 for lack of participation. Mother continued to report using drugs even though she had already completed inpatient treatment. Her visitation rights had not been reinstated. Consequently, at no point from September 2022 to April 2023 could the trial court have placed the children in Mother's care in the near future. Mother, therefore, did not make reasonable progress during the nine-month period from September 2022 to April 2023. See *F.P.*, 2014 IL App (4th) 140360, ¶ 88. Since the evidence confirms Mother did not make reasonable progress during the nine-month period, we conclude the court's unfitness finding does not stand against the manifest weight of the evidence because the opposite finding (*i.e.*, fitness) is not

readily apparent. See *A.L.*, 409 Ill. App. 3d at 500. Accordingly, any argument to the contrary on appeal would be meritless.

¶ 48                                    C. Best Interests Finding

¶ 49        After a parent is found unfit, "the focus shifts to the child." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The issue ceases to be "whether parental rights can be terminated" and becomes "whether, in light of the child's needs, parental rights should be terminated." (Emphases omitted.) *D.T.*, 212 Ill. 2d at 364. The trial court will consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005). Those factors include: the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels loved, attached, and valued; the child's sense of security, familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness of every family and each child. 705 ILCS 405/1-3(4.05) (West 2020). We will not overturn a court's best interests finding unless it is against the manifest weight of the evidence. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009).

¶ 50        Here, the evidence shows the best interests factors, including the children's physical safety and welfare, their sense of attachment and security, and their need for permanence, support the termination of Mother's parental rights. The children were each bonded with their respective foster families, who provided for their physical, emotional, and social needs and who were willing to adopt them. One of the minors asked if they would be able to change their names if they were adopted. Conversely, Mother's visits were never reinstated. She did not

- 13 -

send the children letters, cards, or gifts, and she had not seen her children in over two years by the time of the best interests hearing. The trial court's best interests decision was not against the manifest weight of the evidence, as the opposite conclusion was not clearly evident. See *T.A.*, 359 Ill. App. 3d at 960.

¶ 51    Based on the record, there are no meritorious arguments which could be raised on appeal to reasonably claim the trial court erred in finding Mother unfit and it was in the children's best interests to terminate Mother's parental rights.

¶ 52                                    III. CONCLUSION

¶ 53    For the reasons stated, we grant appellate counsel's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 54    Affirmed.